UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FEDERICO CAMPOS,

    Plaintiff,

  v.

DONALD KRAMER, Sheriff of Kane County, in his official capacity and KANE COUNTY, a municipal corporation,

    Defendants.

No. 14 CV 01102

Judge Manish S. Shah

**MEMORANDUM OPINION AND ORDER**

Federico Campos claims that pursuant to jail policy, he was required to take tuberculosis medication against his will while in custody of the Sheriff of Kane County at the Kane County jail and that he suffered an adverse reaction to this medication. Sheriff Donald Kramer and Kane County move for summary judgment on Campos's remaining Section 1983 claim,[1] arguing that Campos failed to exhaust administrative remedies under the Prison Litigation Reform Act and failed to file suit within the statute of limitations.

For the reasons discussed below, defendants' motion is denied.

**I.    Legal Standards**

Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

---

[1] The current Sheriff of Kane County, Donald Kramer, was substituted for defendant Patrick Perez, who was Sheriff at the time of the alleged events. [52]. Campos's additional Section 1983 claim against various unknown deputy sheriffs and agents was previously dismissed. [44].

matter of law. Fed. R. Civ. P. 56(a); *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir. 2014); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In its analysis, the court must construe the facts and make reasonable inferences in the light most favorable to the nonmoving party. *CTL ex rel. Trebatoski v. Ashland Sch. Dist.*, 743 F.3d 524, 528 (7th Cir. 2014).

## II. Background

Campos brings his claim against the Sheriff and Kane County under 42 U.S.C. § 1983, alleging that defendants were deliberately indifferent to Campos's medical condition. [66] ¶¶ 2–4. Campos claims that he was required to take the tuberculosis medication "INH" against his will pursuant to jail policy and that he suffered an adverse reaction to the drug, including coughing blood, jaundice, and liver failure. [66] ¶ 4.

Between January 7, 2012, and March 2, 2012, Campos was a pre-trial detainee in the custody of the Sheriff of Kane County, held at the Kane County Adult Justice Center. [66] ¶¶ 1, 22, 47.[2] The parties dispute whether Campos has an "active" tuberculosis disease, but Campos admits that he was found to be a latent carrier of tuberculosis due to his exposure to the disease approximately twenty years ago. [68] ¶ 2, [65] at 2–3. On January 20, 2012, a doctor at the jail prescribed the tuberculosis medication "INH" (also known as Isoniazid) for Campos, despite being told by Campos that he did not want it. [66] ¶ 37, [68] ¶ 1. The

---

[2] Citations to the record are designated by the document number on the district court docket, placed in brackets. [66] refers to the Sheriff's and Kane County's Local Rule 56.1 statements, with Campos's responses. [68] refers to Campos's Local Rule 56.1 statements, with the defendants' responses.

prescription was for 900mg of INH twice per week by mouth from January 20, 2012, to October 20, 2012. [68] ¶ 1. Campos received INH pursuant to this prescription until February 28, 2012, when the doctor ordered to "Hold TB Meds." [68] ¶ 5. The INH was distributed to Campos in pill form and he would swallow it. [66] ¶ 39. Campos voluntarily decided to take the medication because the doctor prescribed it for him. [66] ¶ 39. No one at the jail other than the prescribing doctor told Campos he had to take INH. [66] ¶ 38.

On February 12, 2012, Campos was visited at the jail by family, who told Campos that he looked yellow. [66] ¶ 41. Two days later, Campos's cellmate complained about blood coming out of Campos's mouth to a correctional officer. [66] ¶ 42. That same day, a correctional officer contacted the medical staff, a nurse came to see Campos and assessed him with bleeding gums, and he was referred to see a dentist and given penicillin to prevent an infection. [66] ¶ 43. Campos had no prior history of bleeding gums. [68] ¶ 3. Campos did not tell the nurse or anyone else that he had a yellow appearance. [66] ¶ 44. Campos's yellow (jaundiced) appearance was recognized by medical staff at the jail who reported it to him; he did not tell them about it. [66] ¶ 45. On February 26, 2012, a nurse at the jail noted that Campos's skin appeared to be "mustard yellow." [68] ¶ 4. Two days after that, a doctor at the jail ordered to "Hold TB Meds." [68] ¶ 5. A week after the nurse first noted the yellow skin, Campos was taken to the jail infirmary, where a doctor recommended that he be sent to the hospital. [66] ¶ 46. That same day, Campos was released from the jail to Delnor Hospital for treatment. [66] ¶ 47. While at Delnor Hospital,

3

Campos came to believe that INH had caused his medical problems when a nurse at the hospital suggested he further investigate his treatment at the jail, specifically related to the INH medication delivery. [66] ¶ 48. Campos was transferred from Delnor Hospital to Northwestern Memorial Hospital on March 8, 2012, and was discharged home from Northwestern on March 14, 2012. [66] ¶ 49.

### III. Analysis

#### A. Prison Litigation Reform Act

The Sheriff and Kane County argue that they are entitled to summary judgment because Campos was a detainee who failed to exhaust his administrative remedies, as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e *et seq*. Campos argues that the PLRA exhaustion requirement does not apply to him because he was no longer a prisoner at the time he filed this lawsuit. In the alternative, and somewhat inconsistently, Campos argues: (1) that administrative remedies were not available because the jail's detainee handbook only described procedures for disciplinary grievances, not medical issues, and (2) that he did exhaust available administrative remedies by initially denying the INH medication and later making known his illness.

The PLRA states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Under the PLRA, "'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal

4

law or the terms and conditions of parole, probation, pretrial release, or diversionary program." *Id*. § 1997e(h). "[T]he status of the plaintiff at the time he brings his suit" determines whether the plaintiff is a prisoner subject to the PLRA's exhaustion requirements. *Witzke v. Femal*, 376 F.3d 744, 750 (7th Cir. 2004). So Campos's status at the time he filed suit in February 2014 determines whether he is subject to the PLRA.

Campos was released from the Kane County jail on March 2, 2012, [66] ¶¶ 1, 22, 47, and filed his complaint against the Sheriff of Kane County and Kane County on February 14, 2014. [1]. Campos was no longer a "prisoner" under the PLRA at the time he filed suit and therefore was not subject to the PLRA's exhaustion requirement. *See Kerr v. Puckett*, 138 F.3d 321, 323 (7th Cir. 1998) (PLRA did not apply to former prisoner filing suit after his release). Because the PLRA's exhaustion requirement does not apply to Campos, the parties' arguments over whether Campos exhausted available administrative remedies while at the jail are irrelevant. Defendants' motion for summary judgment based on Campos's alleged failure to exhaust administrative remedies under the PLRA is denied.[3]

### B. Statute of Limitations

Both sides agree that a two-year statute of limitation applies to Campos's Section 1983 claim, but dispute the date of its accrual and whether Campos should be entitled to equitable tolling due to his mental health. "For claims brought under

---

[3] Defendants' reliance on *Zehner v. Trigg*, 952 F.Supp. 1318 (S.D. Ind. 1997), is misplaced and contrary to well-established Seventh Circuit case law regarding the applicability of the PLRA. In *Kerr v. Puckett*, 138 F.3d 321 (7th Cir. 1998), the Seventh Circuit rejected the *Zehner* court's reasoning that the date of the alleged wrong should serve as the determining factor for PLRA applicability. *Kerr*, 138 F.3d at 322–23.

5

§ 1983, we borrow the limitations period and tolling rules applicable to personal-injury claims under state law." *Devbrow v. Kalu*, 705 F.3d 765, 767 (7th Cir. 2013). Under Illinois law, the personal injury statute of limitations is two years. 735 ILCS 5/13-202. Campos's original complaint was filed February 14, 2014, so his claim must have accrued on or after February 14, 2012, for it to be timely.

The Sheriff and Kane County argue that Campos's alleged injury was the initial prescription of the tuberculosis medication on January 20, 2012, so the statute of limitations began running on that date. Campos proposes two alternative accrual dates. First, Campos argues that his claim accrued on February 14, 2012, when he was seen by prison medical staff due to what was thought to be bleeding gums, but he provides sparse reasoning for accrual on this date. Second, Campos argues for March 2, 2012, when he was released from custody to the hospital for medical treatment. Campos provides two reasons for a March 2, 2012, accrual date: (1) his Section 1983 claim is based on a continuing violation that only ceased upon his release, and (2) under the Illinois discovery rule and Federal Tort Claims Act, accrual begins when Campos discovers or should have discovered the cause of his injury, which was when a nurse at the hospital suggested a link between his hospitalization and the tuberculosis medication. For the alternative reasons discussed below, Campos's Section 1983 claim did not accrue until at least late February or early March 2012, and therefore his claim is timely under the two-year statute of limitations.

Although tolling rules for Section 1983 claims are borrowed from state law, accrual rules "are governed by federal law 'conforming in general to common-law tort principles.'" *Devbrow*, 705 F.3d at 767 (quoting *Wallace v. Kato*, 549 U.S. 384, 388 (2007)).[4] Under federal law, "[t]here is no single accrual rule for all § 1983 claims. Rather, we use the rule that applies to the common-law cause of action most similar to the kind of claim the plaintiff asserts." *Id*. For Section 1983 deliberate indifference claims, the analysis under Federal Tort Claims Act applies, and the claim accrues when the plaintiff knows of his physical injury and its cause, even if the severity of the injury is not yet known. *Id*. at 768.

The Sheriff and Kane County argue that Campos's alleged injury was the initial prescription of his tuberculosis medication on January 20, 2012. But "for a § 1983 claim based on medical injury arising from deliberate indifference, the relevant injury for statute-of-limitations purposes is not the intangible harm to the prisoner's constitutional rights but the physical injury caused by the defendants' indifference to the prisoner's medical needs." *Devbrow*, 705 F.3d at 768. Campos alleges that the tuberculosis medication caused physical harm (including coughing blood, jaundice, and liver failure), ultimately resulting in his hospitalization in March 2012 for nearly two weeks. [66] ¶¶ 41–49; [68] ¶¶ 4–5. Although Campos was aware of various physical symptoms (e.g., bleeding, yellow appearance) prior to his hospitalization, he first became aware of the alleged cause of this injury when the

---

[4] The Illinois discovery rule is an accrual rule and therefore not applicable for determining accrual of Campos's Section 1983 claim. *See Clay v. Kuhl*, 189 Ill.2d 603, 608 (2000).

7

nurse at Delnor Hospital suggested he investigate a possible link between his hospitalization and the tuberculosis medication. [66] ¶ 48. Therefore, his claim did not accrue until his stay at Delnor Hospital in early March 2012, which makes his February 14, 2014 complaint timely.

Alternatively, the continuing violation doctrine delays the start of the limitations period until the date of Campos's last alleged injury. "For continuing Eighth Amendment violations, the two-year period starts to run (that is, the cause of action accrues) from the date of the last incidence of that violation, not the first." *Turley v. Rednour*, 729 F.3d 645, 651 (7th Cir. 2013).[5] "A violation is continuing where it would be unreasonable to require or even permit [a prisoner] to sue separately over every incident of the defendant's unlawful conduct." *Id.*; *see, e.g., Heard v. Sheahan,* 253 F.3d 316, 318 (7th Cir. 2001) (Section 1983 deliberate indifference claim for failure to treat an inmate's hernia, a continuing violation, accrued when the inmate left the prison).

Campos based his deliberate indifference claim on both the alleged prescription of the tuberculosis medication and the alleged failure to treat his adverse reaction to the medication. [35] ¶¶ 7–11, 27. Based on the undisputed facts, Campos was prescribed INH on January 20, 2012, and continued receiving it pursuant to the prescription until February 28, 2012. [66] ¶ 37, [68] ¶¶ 1, 5. On

---

[5] Because he was a county pretrial detainee, [66] ¶ 1, Campos's complaint arises under the Fourteenth Amendment's due process clause, but Eighth Amendment case law guides in evaluating his claims. *See Budd v. Motley*, 711 F.3d 840, 842 (7th Cir. 2013) (applying Eighth Amendment case law to pretrial detainee's deliberate indifference claim brought under the Fourteenth Amendment); *Rice ex rel. Rice v. Corr. Med. Servs.,* 675 F.3d 650, 664 (7th Cir. 2012) ("courts still look to Eighth Amendment case law in addressing the claims of pretrial detainees").

March 2, 2012, a doctor at the Center recommended that Campos be sent to the hospital, and he was released to Delnor Hospital for treatment that same day. [66] ¶¶ 46–47. Not only did the prescription continue until February 28, 2012, but the alleged failure to properly identify and treat his alleged adverse reaction to the medication continued until he was released to the hospital. *See, e.g., Heard*, 253 F.3d at 318 ("[T]he suit charges that the defendants inflicted cruel and unusual punishment on the plaintiff by refusing to treat his condition. This refusal continued for as long as the defendants had the power to do something about his condition, which is to say until he left the jail."); *Koch v. Gregory*, 536 Fed. App'x 659, 660 (7th Cir. 2013) (claim that plaintiff was forcibly medicated began accruing when forcible medication ended). Because the alleged violation was continuing, "the cause of action accrues … at the date of the last injury." *Heard*, 253 F.3d at 319 (quotation and citation omitted).

Here, Campos's alleged injury continued until either the prescription ended in late February 2012 or until he received treatment for his adverse reaction to the medication in early March 2012. Therefore, under either the Section 1983 accrual rules or the continuing violation doctrine, Campos's claim did not accrue until late February or early March 2012, which makes his February 14, 2014 complaint timely.[6]

---

[6] Defendants' argument that "the Supreme Court and the Court of Appeals have never applied continuing violation reasoning outside of the employment discrimination context," [69] at 8, is not quite correct. As discussed above, several decisions from the Seventh Circuit apply the continuing violation doctrine to Section 1983 deliberate indifference claims. *See Heard*, 253 F.3d at 320 ("Numerous cases assume that a federal doctrine of continuing wrongs is indeed applicable to suits under 42 U.S.C. § 1983. [. . .] We agree.").

Campos's complaint was timely; therefore, Campos need not resort to equitable tolling to save his claim. Defendants' motion for summary judgment based on Campos's alleged failure to timely file is denied.

## IV.    Conclusion

The defendants' motion for summary judgment, [60], is denied.


ENTER:

_____
Manish S. Shah
United States District Judge

Date:  8/19/15